UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL NO. 04-31-DCR
CIVIL NO. 08-7008-DCR

UNITED STATES OF AMERICA                                                    PLAINTIFF


v.                                    RECOMMENDED DISPOSITION


ALAN R. MANN                                                                 DEFENDANT

\* \* \* \* \*

The Court considers a § 2255 motion filed by *pro se* Defendant Alan R. Mann, on referral from the District Judge. *See* DE #223. A jury convicted Mann of the following charges: two counts of conspiracy to manufacture over 50 grams of methamphetamine, first between September 1999 and October 2001 and then between April 2002 and March 2004 (21 U.S.C. §§ 841/846); two counts of distributing meth, on February 24 and February 26, 2004 (§ 841); two counts of possessing equipment and precursors used to manufacture meth, on February 26, 2004 and March 4, 2004 (21 U.S.C. § 843(a)(6)); possessing an unregistered destructive device, on February 26, 2004 (26 U.S.C. § 5681(d)); and possessing a firearm while a convicted felon, in March 2004 (18 U.S.C. § 922(g)(1)). *See* DE #9 (Indictment); DE #175 (Judgment).

Mann received life sentences for each conspiracy charge; thirty year prison terms for both distribution offenses; twenty year prison terms for the § 843 charges; a ten year term for the § 5681(d) offense; and a ten year term for the felon-in-possession charge. *See* DE #175. Defendant appealed, but the Sixth Circuit affirmed Mann's conviction and sentence. *See United States v. Mann*, 195

1

F. App'x 430, 439 (6th Cir. 2006). The Supreme Court then denied Mann's petition for writ of certiorari. *See Mann v. United States*, 127 S. Ct. 1000 (2007).

Couched in terms of ineffective assistance, Mann argues that the United States failed to prove a conspiracy to manufacture over 50 grams of actual meth, failed to prove possession of a "destructive device," and failed to prove possession of a firearm. In addition, Movant argues that counsel should have filed a motion to suppress evidence seized during a search of his garage and should have renewed an earlier motion to sever the § 922(g)(1) charge. Based on the two conspiracy charges, Mann further asserts that the indictment was multiplicitous.

For the reasons that follow, the Court recommends that the District Court DENY Mann's motion for § 2255 relief.

**I. Background**

According to testimony adduced at Mann's jury trial, state police began investigating Defendant in 2004. On February 24, a cooperating witness (CW) arranged to buy meth from Mann during a recorded phone call. *See* DE #202[1] Jason O'Bannon at 105-06; DE #202 Gerry Lynch at 115-16. Wired with audio and video equipment, the CW traveled to Mann's garage that day and purchased approximately two grams of meth with money provided by police. *See* O'Bannon at 107. Co-defendant Tiffany Arnold was at Mann's garage during the purchase. Mann provided the meth to the CW, but the video showed Defendant asking Arnold about the purchase price and giving Arnold the drug money. *See* Lynch at 122-24.

---

[1] Citations concerning testimony are to the pertinent docket entry for the particular transcript volume.

Two days after the controlled buy, local (not state) police searched Mann's garage after receiving complaints about drug trafficking by Defendant.[2] *See* DE #202 Tim Helton at 132. Mann was not there, but officers obtained consent to search the garage from Mann's mother. *See id.* at 133. She had a key and unlocked the building. *See id.* Inside, police found substantial incriminating equipment and precursors used to manufacture meth. *See* DE #141 Brian Reams at 5-20 (indicating that Mann's meth lab was "one of the largest"). In addition, police discovered a pipe bomb. A bomb squad unit subsequently disabled the device.

During the search, officer Helton answered a phone call to the garage. *See* Helton at 135. The caller asked whether "there was some stuff ready," and Helton answered "yes." *See id.* Police subsequently arrested two men, Dennis Perry and Isaac Mills, traveling to the garage. *See id.* at 136. At trial, Perry testified that he intended to purchase meth from Mann. Perry further stated that he had purchased meth from Defendant in the past. Several other witnesses testified that they either had purchased meth from Mann or had assisted Mann or Arnold in meth manufacturing.

On March 4, 2004, officers arrested Arnold and Mann at Arnold's apartment complex. *See* DE #143 Brian Metzger at 20. Mann, Arnold, and Arnold's half sister, Angela Sowders, were leaving the apartment when police intercepted the group in the parking lot. *See id.* at 21. Mann and Arnold both had bags or backpacks. *See id.* at 22. Except for ephedrine, police testified that the bag carried by Arnold contained a "fully functional" meth lab. *See* DE #142 Rob Jones at 12, 15. Police further discovered a car parked at the apartment complex registered to Mann (although police testified to seeing only Arnold – not Mann – driving the vehicle). *See* Metzger at 23; Jones at 14.

---

[2] It appears that local police were not aware of the previously-conducted controlled drug buy and state investigation. *See* O'Bannon at 111-12.

The vehicle contained equipment consistent with meth manufacturing. *See id*. at 26. In addition, police found a firearm wrapped in a towel concealed under the hood. *See* Metzger at 29; Jones at 14.

Police interviewed Mann following his arrest. *See* DE #203 Richard Dalrymple at 214-15. Between September 1999 and October 2001, Mann admitted that he and Arnold had manufactured between two and eight ounces of meth about every three weeks. *See id*. at 216-18. Between April 2002 and March 2004, Defendant further admitted that he and Arnold had produced ¼ to ½ an ounce of meth every two to three weeks. *See id*. at 220. Based on Mann's admissions, Agent Dalrymple "conservatively" estimated at trial that Mann had produced 7.4 kilograms of meth during September 1999 through October 2001 and 160+ grams from April 2002 to March 2004. *See id*. at 218-19, 234.

Based on the suspected criminal activity, a grand jury in the Eastern District of Kentucky returned a nine count indictment against Mann and Arnold. The indictment, in counts one and two, charged distinct conspiracies to manufacture meth. *See* DE #9 (Indictment). The first meth conspiracy allegedly began in September 1999 and ended in October 2001.[3] A second conspiracy allegedly occurred between April 2002 and March 2004.[4] *See id*.

Counts three through nine alleged substantive offenses. Count three specifically charged Mann and Arnold with distributing an unspecified quantity of meth on or about February 24, 2004. The indictment charged Mann individually in count four (distributing meth on February 26, 2004); count five (possessing equipment and precursors used to manufacture meth on February 26, 2004);

---

[3] Prior to trial, the United States dismissed the first conspiracy count against Arnold. *See* DE #132 and #139.

[4] During the interim, Arnold was in jail serving state charges.

4

count six (possessing an unregistered destructive device on February 26, 2004); and count nine (felon-in-possession of a firearm in March 2004).[5] Count eight charged both Arnold and Mann with possessing equipment and precursors used to manufacture meth on or about March 4, 2004. *See id*.

The United States tried Mann and Arnold separately. Defendant did not testify at trial. A jury subsequently convicted Mann on all counts. By special verdict, the jury held Mann accountable for 7.4 kilograms of methamphetamine relating to the first conspiracy charge and 161 grams of meth on the second conspiracy count. *See* DE #137.

Mann appealed his conviction and sentence. He argued: the indictment was multiplicitous by charging two distinct conspiracies rather than one ongoing conspiracy; the district court erred by refusing to sever the felon-in-possession charge; the evidence was insufficient to support the convictions for possessing precursor materials and for being a felon-in-possession; and the sentence was unreasonable. *See United States v. Mann*, 195 F. App'x 430, 432 (6th Cir. 2006). The Sixth Circuit rejected Mann's appeal. *See id*. at 439. The timely § 2255 motion followed.

Although styled as an ineffective assistance claim, Mann essentially argues that the United States failed to prove a conspiracy to manufacture over 50 grams of **actual** meth (versus a mixture containing meth), failed to prove possession of a "destructive device," and failed to prove possession of a firearm. Movant complains that counsel inadequately contested or did not object to the charges. Similarly, Mann complains that counsel should have filed a motion to suppress based on the search of his garage and that counsel should have renewed an earlier motion to sever the § 922(g)(1) charge. Finally, Movant again asserts that the indictment was multiplicitous. On appeal,

---

[5] Count seven charged Arnold individually with distributing an unspecified quantity of meth in March 2004.

the Sixth Circuit agreed that the indictment was multiplicitous but rejected any relief because Mann failed to show prejudice.

## II. Standard of Review

Under 28 U.S.C. § 2255, a federal prisoner may seek relief because a sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. *See* 28 U.S.C. § 2255. To prevail on a § 2255 motion alleging constitutional error, a petitioner must establish that the error had a "substantial and injurious effect or influence on the proceedings." *See Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1721-22 (1993)). To prevail on a motion alleging non-constitutional error, a petitioner must establish a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *See United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (citing *Hill v. United States*, 82 S. Ct. 468, 471 (1962)); *see also Watson*, 165 F.3d at 488.[6]

## III. Analysis

### *Meth Quantity*

Mann argues that the United States failed to prove a conspiracy to manufacture over 50 grams of actual methamphetamine, contending that counsel inadequately contested the drug quantity at trial. The Court rejects Mann's argument. At the close of evidence by the United States, defense counsel specifically moved the District Court to enter a judgment of acquittal on the two conspiracy

---

[6] The Court additionally recognizes Mann's *pro se* status. *Pro se* petitions receive a comparatively lenient construction by the Court. *See Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (holding that "allegations of a pro se habeas petition, 'though vague and conclusory, are entitled to a liberal construction'" including "active interpretation" toward encompassing an allegation stating "federal relief")(citations omitted).

charges. *See* DE #204 at 71. The District Court overruled the motion. *See id*. at 76. On appeal, Defendant did not argue that the evidence regarding drug quantity was insufficient.

To assert a claim not properly raised on direct review, a defendant ordinarily must show cause for the default and prejudice, or demonstrate actual innocence. *See Bousley v. United States*, 118 S. Ct. 1604, 1611 (1998). Mann has not established either exception. The procedural default rule, however, generally does not apply to ineffective assistance claims. *See Massaro v. United States*, 123 S. Ct. 1690, 1694 (2003); *United States v. Combs*, 369 F.3d 925, 940 (6th Cir. 2004). In this case, Mann attempts to bypass the procedural default rule by arguing that counsel ineffectively failed to challenge the sufficiency of the evidence. The argument has no merit. As previously discussed, counsel properly moved the District Court to enter a judgment of acquittal

Moreover, based on testimony by Agent Dalrymple, the District Court properly determined that there was sufficient evidence to support the indictment's conspiracy charges and overruled defense counsel's motion. Agent Dalrymple interviewed Defendant after his arrest on March 4, 2004. *See* DE #203 Dalrymple at 214-15. Mann admitted to Dalrymple that, between September 1999 to October 2001, he and Arnold had manufactured between two and eight ounces of meth **every three weeks.** *See id*. at 216-218. Mann further admitted that, between April 2002 and March 2004, he and Arnold had produced ¼ to ½ an ounce of meth every two to three weeks. *See id*. at 220. Considering and premised on the admissions by Mann, Agent Dalrymple "conservatively" estimated at trial that Mann had produced 7.4 kilograms of meth during September 1999 to October 2001 and 160+ grams from April 2002 to March 2004. *See id*. at 218-19, 234. Dalrymple specifically performed the calculations supporting his estimates.

Movant does not refute the testimony or calculations by Dalrymple, but essentially complains

that the jury overestimated the *purity* of the meth. Testimony showed that Mann had previously produced thirteen grams with 75% purity and seven grams with 95% purity. Mann argues that these purity levels were not "representative" of his "overall" drug production. *See* DE #237 Reply Memo at 11. The analysis by Mann plainly fails. If the 7.4 kilograms and 160+ grams calculated by Dalrymple represent a mixture or substance containing meth, and if the Court applies only a 20% purity level (meth typically ranges from 20% to 70% pure, *see* DE #203 Beverly Wagoner at 200), the amount of actual meth produced by Mann would have easily (*i.e.*, by a factor of 30) exceeded 50 grams.[7] Movant fails to approach the required showing for relief as to this issue.

### *Destructive Device*

Next, Mann argues that counsel improperly failed to object to evidence of the alleged "pipe bomb." According to Movant, he intended to use the device for "display of fireworks." *See* DE #237 at 11-12. The Court construes Mann's claim as challenging whether the evidence was sufficient to support the § 5681(d) offense. Again, Mann should have raised this argument on direct review. Because Mann has not established cause and prejudice or actual innocence, the procedural default rule applies. *See Bousley*, 118 S. Ct. at 1611.

The sufficiency of the evidence claims also fails on the merits. During the police interview, Mann explained to officers that the device was a model rocket. *See* DE #203 Tom Chittum at 63-64. Testimony at trial clearly showed that the device's design was consistent with a pipe bomb – not a model rocket. The device had an improvised timer and was made from copper pipe. In addition, both ends of the pipe had been soldered shut. By comparison, a model rocket would have had a

---

[7] According to the Sixth Circuit's decision on appeal, the facts legally establish only one conspiracy. *See Mann*, 195 F. App'x at 434-35. Thus, the total amount of actual meth inarguably exceeds 50 grams.

8

"vent" to direct the blast and propel the rocket. Based on these distinctions, the testimony fairly established that the device was a "pipe bomb."

To the extent that Mann argues ineffective assistance, the Court notes that counsel properly moved the District Court to enter judgment of acquittal on the count. *See* DE #204 at 72. The District Judge then rejected the motion. *See id*. at 76-77. On this record, counsel's performance was neither deficient or prejudicial.

*Firearm Possession*

After police arrested Mann at Arnold's apartment complex, officers searched a car registered to Mann and parked nearby at the complex. During the search, police found a firearm wrapped in a towel and concealed under the car's hood. Because police had seen only Arnold – not Defendant – driving the vehicle, Mann argues that the United States failed to prove that he possessed the weapon. The weapon supported the § 922(g)(1) charge, and Defendant has a prior felony on his record.

Although styled as an ineffective assistance claim, the Court again construes the claim as essentially challenging the sufficiency of the evidence. Defense counsel properly moved the District Court to enter judgment of acquittal. *See* DE #204 at 72. Again, the District Judge overruled the motion. *See id*. at 77. Mann appealed. Because Mann owned the vehicle and was arrested beside the car, the Sixth Circuit found that a rational juror could infer that Mann constructively possessed the weapon. *See Mann*, 195 F. App'x at 436-37.

Absent highly exceptional circumstances, such as intervening change in the law, a § 2255 motion may not relitigate an issue raised and decided adversely on appeal. *See, e.g., Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999). Here, Mann has not established, or even offered, highly

9

exceptional circumstances. Because Mann essentially reasserts the same argument considered and rejected by the Sixth Circuit, unpersuasively clothed in the rhetoric of ineffective assistance, further review by this Court would be inappropriate. *See id*.

*Failure to File Suppression Motion*

On February 26, 2004, local police searched Mann's garage after receiving complaints about drug trafficking. Defendant was not there when local police arrived, but Mann's mother provided consent to search the building. The building was a garage at a Corbin, Kentucky residence. Mrs. Mann answered the door at the residence. On the request to search the garage, she consented, walked the officers to the garage, had a key, and unlocked the garage. *See* DE #202 at 132-33. Police subsequently found a pipe bomb and substantial inculpatory equipment and precursors used to manufacture meth.

Defendant asserts that his mother lacked the authority to consent and that counsel afforded him ineffective assistance by failing to file a motion to suppress evidence obtained from the search. *See* DE #223 at 6. When an ineffective assistance of counsel claim is based on counsel's failure to file a motion to suppress evidence due to an alleged violation of the Fourth Amendment, a complaining defendant must prove: 1) "his Fourth Amendment claim is meritorious;" 2) counsel was incompetent; and 3) counsel's incompetence prejudiced the defendant. *See Kimmelman v. Morrison*, 106 S. Ct. 2574, 2587-2588 (1986)("Although a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim like respondent's, a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief. Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence.").

10

Accordingly, before engaging in the two-prong *Strickland* analysis, the Court will first determine whether Movant's Fourth Amendment claim has merit.

As relevant, no Fourth Amendment violation occurs if police obtain voluntary consent to search "from a third party who possesses common authority over the premises." *See Illinois v. Rodriguez*, 110 S. Ct. 2793, 2797 (1990). When making a determination regarding "common authority," courts consider a number of factors, including: 1) "whether the co-occupant owns the residence or is named on the lease;" 2) contribution of rent by the individual; 3) "whether the individual visited the residence when the co-occupant was not present;" and 4) possession or lack of possession of a key to the place to be searched. *See Pratt v. United States*, 214 F. App'x 532, 535 (6th Cir. 2007)(finding the defendant's mother to have actual authority to consent to the search of her son's bedroom because she had title to and lived in the residence, ordinarily had a key to the room, and had continuous access to the room.) Even if the third party does not in fact have "common authority" over the property, the search is valid if police reasonably believed that the granting third party had such authority. *See Rodriguez,* 110 S. Ct. at 2800. Because Mann's mother owned the building and had a key to the garage, she would have had both actual and apparent common authority to consent to the search. *See, e.g., United States v. Yarborough*, 852 F.2d 1522, 1534 (9th Cir. 1988)("A party who 'has the key to the premises and access throughout the residence' can give a valid consent to search.")(quotation omitted).

Mann argues that his mother did not have actual authority over the garage because she leased the building to him. In addition, he asserts that police could not have reasonably believed that his mother had common authority because police would have known "from surveillance that Mann exercised exclusive, sole control over the building." *See* DE #237 at 13. Defendant's argument is

11

baseless. Local police searched Mann's garage on February 26. No testimony indicates that local police had been actively investigating Mann. If Movant's comment about "surveillance" refers to the prior February 24 controlled drug buy, the Court notes that state – not local – police conducted that operation. Further, the record indicates that the state and local investigations were "independent." *See* O'Bannon at 111-12.

As such, the Court rejects Mann's conclusory allegation. Defendant provides no specific factual support to show that local police would have known that Mann "exercised exclusive" control over the garage based on prior "surveillance" by police. Since Defendant has not set forth a meritorious claim under the Fourth Amendment, the Court need not engage in a full *Strickland* analysis.

*Failure to Sever*

Prior to trial, Mann filed a motion under Rule 14 to sever the felon-in-possession charge. *See* DE #105. The District Court denied the motion. *See* DE #121. Defendant appealed the matter, but the Sixth Circuit refused to review the claim because Mann did not renew the motion at the close of evidence. *See Mann*, 195 F. App'x at 435-36. Because counsel failed to renew the motion, Mann argues that counsel's performance was deficient. In addition, Movant asserts that counsel's error was prejudicial because the Sixth Circuit "ruled, in effect, that if counsel had renewed his motion, the motion would have been granted." *See* DE #237 at 15.

The Court flatly disagrees. The Sixth Circuit nowhere suggested (much less stated) in its opinion that the motion to sever, an act of trial court discretion, should have been granted. Mann has not shown that the failure to sever was improper. Indeed, the District Court provided a proper limiting instruction. *See* DE #204 at 135-36. Ordinarily, if limiting instructions have been provided,

12

the Court should presume that the jury understood and followed the court's directions. *See United States v. Makki*, 129 F. App'x 185, 189 (6th Cir. 2005)("Juries, of course, are presumed to understand and follow such instructions, in the absence of any evidence to the contrary.")(citing *United States v. Chambers*, 944 F.2d 1253 (6th Cir. 1991)). On this record, the Court finds that Mann's ineffective assistance claim has no legal merit. Movant fails to establish a basis for relief under *Strickland*.

*Multiplicitous Indictment*

Finally, Mann asserts that the indictment was multiplicitous by improperly charging distinct conspiracies to manufacture meth. On appeal, the Sixth Circuit agreed that the facts showed only one continuous conspiracy, but the Court rejected Mann's claim for failure to show prejudice. According to the Sixth Circuit, merging the two conspiracy charges "would have no practical effect on Mann's sentence" based on the two imposed concurrent life sentences and additional concurrent prison terms. *See Mann*, 195 F. App'x at 435. Moreover, the Sixth Circuit found the "possibility that Mann was prejudiced by the suggestion that he has committed multiple" conspiracies to be "relatively low" because: the indictment itself charged Defendant with seven other crimes; Defendant's alternative argument, that he never stopped conspiring to manufacture meth, is equally prejudicial; and the District Court properly instructed the jury that the "number of charges is no evidence of guilt" and "to separately consider the evidence that relates to each charge." *See id*.

Mann argues that the multiplicitous indictment was in fact prejudicial. He generally complains that "he will still face a life sentence" if one of his life sentences "is invalidated for any reason." *See* DE #237 at 14. Over the course of his "lifetime," Mann speculates that any "number of events could effectuate the invalidation of one his life sentences." *See id*. Plainly, Defendant's

13

argument is speculative and frivolous. In addition, the Sixth Circuit squarely found that the multiplicitous charges had not prejudiced Mann. Again, Movant may not relitigate issues adversely decided on direct review. *See Jones*, 178 F.3d at 796. This claim accordingly fails.[8]

## IV. Evidentiary Hearing

Mann requests an evidentiary hearing. Section 2255 requires a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" *See* 28 U.S.C. § 2255(b). The Court need not conduct a hearing, however, if the allegations in the petition are conclusory, inherently incredible, or refuted by the record. *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). In this case, the record and clear legal authority conclusively refute Mann's claims. Accordingly, the Court finds that the motion warrants no additional evidentiary development by way of a hearing.

## V. Certificate of Appealability

A certificate of appealability may issue when a petitioner has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This requires the movant to demonstrate that "jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *see also Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001)(requiring an "individualized determination of each claim" in considering whether to grant a certificate of appealability).

---

[8] Mann's additional claim that the District Court lacked jurisdiction under 18 U.S.C. 3231 is also frivolous and thus fails. *See United States v. Miles*, 244 F. App'x 31, 33 (7th Cir. 2007); *United States v. Potts*, No. 07-3057, 2007 WL 3036847, at *2 (3d Cir. Oct. 18, 2007); *see also United States v. Risquet*, 426 F. Supp. 2d 310, 311-12 (E.D. Pa. 2006).

Here, the determinations by the Court, most of which hinge directly on the Sixth Circuit's prior ruling, are not fairly "debatable." Thus, Mann has not made a "substantial showing" as to any claimed denial of right. As such, in the § 2253 context, the Court recommends that the District Court refuse to certify any issues for appeal.

**VI. Conclusion**

For the reasons stated in this decision, the Court RECOMMENDS that the District Court:

1) DENY, with prejudice, Mann's § 2255 motion, *see* DE #223; and

2) Refuse wholly a certificate of appealability, should Mann request such certification.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within ten days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).    This the 16th day of October, 2008.



Signed By:
Robert E. Wier
United States Magistrate Judge