UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

UNITED STATES OF AMERICA, )
)
Plaintiff, ) Criminal Action No. 6: 04-031-DCR-1
)
V. )
)
ALAN R. MANN, )
)
Defendant. )

**MEMORANDUM OPINION AND ORDER**

*** *** *** ***

A jury convicted Defendant Alan Mann on November 1, 2004, of eight counts related to his participation in a conspiracy to distribute methamphetamine. Specifically, the jury found him guilty of conspiring to manufacture or produce methamphetamine (Counts 1 and 2), distributing a mixture of substance containing a detectable amount of methamphetamine (Counts 3 and 4), possessing equipment used to manufacture methamphetamine (Counts 5 and 8), unlawfully possessing a destructive device (Count 6), and possessing a firearm as a convicted felon (Count 9). He was later sentenced to life imprisonment.

On December 15, 2023, Mann filed a motion for compassionate release, claiming that he was given an unusually long sentence and citing his deteriorating physical health. [Record No. 323] However, the motion will be denied because he fails to identify any extraordinary and compelling circumstance warranting a reduced sentence.

**I.**

Mann is a 68-year-old prisoner incarcerated at the Federal Correctional Facility Beckley. At the time of sentencing in this case, Mann had prior felony convictions for

possessing marijuana with the intent to distribute it and aggravated trafficking in marijuana. [Record No. 35] These prior convictions increased the statutory penalty ranges of incarceration for Counts 1 and 2 to a mandatory term of life, for Count 3 to not more than 30 years, and for Count 4 to not less than 10 years nor more than life. [*Id*. at p. 2] Mann's Total Offense Level was 43, which included an enhancement for possessing dangerous weapons. Combined with a Criminal History Category VI, this produced a guideline range of life imprisonment.[1]

Mann unsuccessfully appealed his conviction and sentence. [Record No. 213] He also filed an unsuccessful motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Record No. 249] Next, on December 30, 2022, the Court denied Mann's first motion for compassionate release because he failed to present an extraordinary and compelling reason justifying a sentence reduction.[2] [Record No. 310] As of this date, Mann has been incarcerated for more than 18 years.

Recently, Mann filed a second motion for compassionate release, claiming that he faces an unusually long sentence and deteriorating physical health. The United States objects to his motion, arguing that any disparity between Mann's sentence and the penalty he would receive under the First Step Act if he were sentenced today does not constitute an extraordinary reason for relief because Section 401 of the First Step Act does not apply retroactively under Sixth Circuit precedent. The government also contends that the defendant's deteriorating health

---

[1] Specifically, Mann was sentenced to life imprisonment on Counts 1 and 2, 30 years imprisonment on Counts 3 and 4, 20 years imprisonment on Counts 5 and 8, and 10 years imprisonment on Counts 6 and 9, to be served concurrently. [Record No. 175]

[2] Mann's earlier primarily argument was that his prior convictions did not constitute "serious drug offense" as defined by the First Step Act.

conditions from the natural aging process are manageable from within Bureau of Prisons custody. And even if Mann had presented an extraordinary reason in support of his motion, the government claims that reducing his sentence would be inconsistent with § 3553 factors, given the defendant's history. [Record No. 325]

**II.**

This Court follows a three-step analysis when considering whether to grant relief under 18 U. S.C. § 3582(c)(1)(A). *United States v. Jones*, 980 F.3d 1098, 1107-08 (6th Cir. 2020). After fully exhausting all administrative remedies, a prisoner seeking compassionate release must show an "extraordinary and compelling reason" to warrant a sentence reduction.[3] *Id*. Second, this Court determines whether the reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. at 1108. Third, the Court analyzes the factors set forth in 18 U.S.C. § 3553(a) to determine whether a reduction authorized by the statute is "warranted in whole or in part under the particular circumstances of the case." *Id*. at 1108 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

Courts are generally without authority to "modify a term of imprisonment once it has been imposed," but there has long been an exception for cases where "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(2)(A)(i). Prior to enactment of the First Step Act of 2018, only the United States Bureau of Prisons ("BOP") could request compassionate release on a defendant's behalf. *United States v. McCall*, 56 F.4th

[3] Congress originally tasked the United States Sentencing Commission with determining "what should be considered extraordinary and compelling reasons for sentence reduction," limiting its discretion only with the qualification that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *See* 28 U.S.C. § 994(t). As explained below, the Commission recently provided additional guidance regarding circumstances constituting extraordinary and compelling reason to warrant relief.

1048, 1054 (6th Cir. 2022) (citing § 3582(c)(1)(A) (2002)). However, the First Step Act eliminated this gatekeeping role and allowed prisoners to move for relief when the BOP declined to act. *Id*.

**III.**

Mann initially argues that his lifetime term of incarceration amounts to an unusually long sentence. He claims the disparity between his sentence and the punishment that he would have received had he been sentenced following enactment of the First Step Act of 2018 amounts to an extraordinary and compelling circumstance warranting relief. Pursuant to the Commission's recent policy statement, Mann asserts that he is entitled to a reduction of his lifetime sentence.

As a threshold matter, the Court has noted before that mandatory minimum penalties apply to a defendant convicted under 21 U.S.C. § 841 when the defendant has prior qualifying convictions for a "serious drug felony" under 21 U.S.C. § 851 at the time of sentencing. Indeed, Section 401 of the First Step Act narrowed the scope of convictions triggering enhanced penalties under 21 U.S.C. § 851. *See* Pub. L. No. 115-391, 132 Stat. 5220. But the act of Congress did not make the change retroactively apply to defendants like Mann who had already been sentenced. Notably, Section 401 applies "only where 'a sentence for the offense has not been imposed as of [the] date of [the First Step Act's] enactment.'" *United States v. Wiseman*, 932 F.3d 411, 417 (6th Cir. 2019) (quoting Pub. L. No. 115-391, 132 Stat. 5194). Mann was sentenced on March 7, 2005 -- almost fourteen years before the First Step Act's enactment. [Record No. 173] Because Section 401 applies only to defendants after the First Step Act's effective date, the possibility that Mann would receive a lesser sentence under the Act does not make him eligible for compassionate release.

Relatedly, Mann's argument that an unusually long sentence constitutes an extraordinary and compelling circumstance is not made more compelling by the fact that he was sentenced to a term of life imprisonment. In *United States v. McCall*, the Sixth Circuit considered whether nonretroactive changes might be considered "extraordinary and compelling circumstances." 56 F.4th at 1048-1055. Sitting *en banc*, the court concluded that "[n]onretroactive legal developments do not factor into the extraordinary and compelling analysis," even when the defendant initially received a life sentence. *McCall*, 56 F.4th at 1065 (observing "[t]he fact that a defendant is serving a pre-First Step Act mandatory life sentence. . . cannot, standing alone, serve as the basis for a sentence reduction under § 3582(c)(1)(A).") (citing *United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021); *see generally United States v. Ruvalcaba*, 26 F. 4th 14, 27 (1st Cir. 2022) ("[I]f a district court were to reduce a sentence solely because . . . [a statute's] non-retroactive amendments would have lowered a defendant's sentence, it might be seen as substituting its own judgment on retroactivity for Congress's judgment."). Thus, Mann's claim that his sentence which includes a term of life imprisonment constitutes an extraordinary and compelling reason is seemingly foreclosed by Sixth Circuit precedent.

But the inquiry does not end there. District courts have maintained broad latitude in deciding what constitutes an "extraordinary and compelling" reason to justify reducing a defendant's sentence. *See McCall*, 56 F.4th 1054 (noting that "[u]ntil the Sentencing Commission updates its policy statements to include defendant-filed motions, district courts retain discretion to define extraordinary and compelling".). In *McCall*, the Sixth Circuit grappled with the largely undefined meaning of the operative phrase "extraordinary and compelling" that has enabled district courts nationwide to reach divergent determinations

regarding which circumstances may qualify. However, the Court concluded that the public's shared understanding of the country's sentencing system provided some clarity. *Id.* at 1055. With respect to the term "extraordinary," the court noted that it "is the expected outcome in our legal system" that legal developments "apply only to defendants not yet sentenced," and that "what is expected cannot be extraordinary." *Id.* at 1056. Regarding the term "compelling," the court concluded that there is "little compelling about the duration of a lawfully imposed sentence." *Id.*

At the same time the Sixth Circuit conceded that "Congress has delegated to the Sentencing Commission the task of describ[ing] what should be considered extraordinary and compelling reasons." *Id.* It also "expressly withheld judgment on whether the Commission could issue a new policy statement that describes 'extraordinary and compelling reasons' in a way that is inconsistent with our interpretation of the statute's language." *See United States v. Brown*, 2024 WL 409062, at *4 (S.D. Ohio Feb. 2, 2024).

While *McCall* seemingly "closed the door on compassionate release for defendants in [Mann's] position for a time, recent developments purport to pry it back open." *See United States v. Carter*, 2024 WL 136777, at *4 (E.D. Pa. Jan. 12, 2024). In late 2023, the Sentencing Commission filled interpretative gaps left open by the First Step Act by passing several amendments and updating policy statements, including the policy for defendant-filed compassionate release motions. The policy provided new guidance for courts when a defendant identifies an "unusually long sentence" as an extraordinary and compelling reason that warrants relief, stating:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may

> be considered in determining whether the defendant presents an extraordinary and compelling reason, *but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances*.

U.S.S.C. 1B1.13(b)(6).[4]

Mann argues that the policy statement applies here because he has served at least ten years of his term and the law has changed since he was sentenced. He also claims that because "there was no death or violence involved in [his] offense[s]" his lifetime sentence is "unusually long" compared to the punishment he would receive for the same offenses now that the First Step Act is law. [Record No. 323] Assuming this policy statement is controlling, the operative language in Mann's case becomes whether the change in law produced "a gross disparity between the sentence being served and the sentence" he would receive today. After making that determination, the Court is then tasked with deciding whether a "full consideration of the defendant's individualized circumstances" warrant a reduced sentence.

If Mann were sentenced for his broad swath of offenses he committed as part of a conspiracy to distribute methamphetamine after the First Step Act became law instead of before its enactment, his new term of incarceration would not result in a disparity with the magnitude that would constitute an extraordinary and compelling circumstance. Mann was sentencing based on his sentencing guidelines calculation that accounted for his extensive criminal history and applicable enhancements for his broad-ranging criminal conduct. Based on his previous felony drug convictions, Mann was also considered a career offender within the meaning of U.S.S.G. § 4B1.1, placing him in Criminal History Category VI at the time of

---

4 This policy statement became effective November 1, 2023.

sentencing. Although Mann is serving mandatory sentences on two counts altered by Section 401 of the First Step Act that reduced minimum terms from life imprisonment to 25 years, the undersigned imposed those sentences—along with sentences for his other convicted offenses––to run concurrently rather than consecutively. Therefore, to declare the difference between his lifetime sentence and the penalty he would receive if he were sentenced today a "gross disparity" would effectively disregard the totality of the serious criminal conduct for which he was sentenced.

Next, even if Mann's sentencing disparity amounted to one contemplated by the Sentencing Commission's policy statement as significant, individualized circumstances in his case counsel strongly against providing him with relief. Mann was convicted for operating a conspiracy to distribute a large quantity of methamphetamine manufactured in a make-shift lab out of a garage in Corbin, Kentucky. [PSR ¶ 8] According to his Presentence Investigation Report, Mann "admitted he began manufacturing methamphetamine in August or September 1999 following his release from federal prison. He estimated that for approximately two years, he and Tiffany Arnold manufactured from three to eight ounces of methamphetamine every two weeks." [PSR ¶ 17] These activities continued until Mann's arrest in March 2004.

When law enforcement subsequently searched the garage and surrounding premises, and despite Mann's previously convictions, they discovered a pipe bomb and a .32 caliber handgun among other things.[5] Aside from these offenses, Mann had been convicted previously

---

5 A search of the garage revealed "numerous items associated with the manufacture of methamphetamine, including, but not limited to the following: 15 glass jars, four Pyrex pans, one glass bowl, nine funnels, one hot plate, two Coleman cook tops, one lamp with a blue bulb, eight bottles of hydrogen peroxide, three full cans of Coleman fuel, six empty cans of Coleman one-gallon fuel cans, two empty propane fuel bottles, a full bottle of Propane fuel, a full can of high solvent acetone, one empty can of acetone, an empty gallon bottle of antifreeze, one

for driving under the influence, theft, receiving stolen property, and being a felon in possession of a firearm. [PSR ¶ ¶ 53-61] This history suggests that Mann lacks respect for the rule of law. Further, previous periods of incarceration have not deterred his criminal activities. Although Mann has participated in rehabilitative programs while an inmate, this Court's broader consideration of his individualized circumstances indicates that a reduced sentence is unwarranted. The seriousness of his repeated and harmful conduct simply outweighs other mitigating factors.[6]

Confronting the question of whether the Sentencing Commission's policy statement now supersedes Sixth Circuit precedent regarding non-retroactive changes in law, the Court offers brief observations. One theory is that *McCall* can best be understood as a decision interpreting the text of the compassionate release statute. And after reviewing the statutory language, the Sixth Circuit concluded that a defendant's disproportionately long sentence is not an "extraordinary and compelling reasons warrant[ing] such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i). This theory would require recognizing that the Sentencing Commission, which is itself a creature of Congress, "does not have the authority to amend the statute [the court] construed" in a prior case. *See Neal v. United States*, 516 U.S. 284, 290 (1996) (observing that even though the Sentencing Commission, entrusted within its sphere to make

---

full gallon bottle of Peak antifreeze, two small, empty bottles of muriatic acid, one bottle of propane fuel with a torch head attached, one empty can of Peak antifreeze containing a white substance" and an empty package of lithium batteries. [PSR ¶ 12]

[6] The Court lacks any official assessment regarding Mann's behavior while incarcerated.

policy judgments, was itself free to reconsider its prior determinations, courts do not have the same latitude to forsake prior interpretations of a statute.") (quotations omitted).[7]

Conversely, another possibility is that the Sentencing Commission's policy statement is now controlling. After all, the Sixth Circuit expressly acknowledged in *McCall* that Congress gave that body authority to determine the meaning of "extraordinary and compelling." And when "Congress entrusts to the [Commission], rather than to the courts, the primary responsibility for interpretating the statutory terms", a court " is not free to set aside [that interpretation] simply because it would have interpreted the statute in a different manner." *See Batterton v. Francis*, 432 U.S. 416, 425 (1977).

Admittedly, *McCall* was decided "in the absence of an applicable policy statement and left open the possibility that one issued by the Sentencing Commission could abrogate its holding." *See Brown*, 2024 WL 409062, at *4. However, this Court need not resolve that tension in this case because Mann's claim fails under both relevant authorities.

Next, Mann argues that his deteriorating health would support a reduced sentence under Section 3582(c). Specifically, he cites osteoarthritis, chronic hip pain, and moderately severe degenerative joint disease as the primary conditions contributing to his deteriorating physical health.

The United States requested Mann's medical records from the Bureau of Prisons, which confirm that he has been treated for various health issues since 2022, including joint issues

---

[7] If *McCall* is indeed controlling, it would foreclose Mann's argument entirely because a non-retroactive change in the law would not constitute an extraordinary and compelling reason to justify reducing his sentence.

with his right hip.[8] Although BOP health officials "recommended . . . a total right hip replacement," they opted to "defer hip surgery for now." [Record No. 323-1] Additional records indicate that BOP officials no longer offer Mann acetaminophen to treat his pain. Other records reveal that he has taken fish oil over the past year, which has "improved his hip pain and mobility." [Record No. 325]

Within the Sixth Circuit, compassionate release has been justified historically by an inmate's poor physical condition if he or she suffers from "unusual circumstances which could not have been reasonably foreseen by the court at the time of sentencing" or "if an inmate becomes severely ill" from a terminal condition. *See McCall*, 56 F.4th at 1059. However, according to the government, Mann's records "do not include any notation that he is suffering from a terminal illness, nor that he is suffering from a serious physical or medical condition [that] BOP cannot effectively treat or manage." *Id*.

However, that the Sentencing Commission recently adopted a policy statement that expands medical circumstances that may warrant compassionate release in recognition of conditions that require long-term care. *See* U.S.S.G. Amend. 814, eff. Nov. 1, 2023. It provides, in relevant part, that extraordinary and compelling reasons may exist to reduce a defendant's sentence if the defendant is "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to

[8] Other conditions for which he has received BOP medical treatment include stage IV kidney disease, hypertension, diabetes, and glaucoma. The government attests that each medical condition is purportedly being managed by BOP medical staff.

provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[9] *See* U.S.S.G. 1B1.13(b)(1)(B)(iii).

Mann claims this policy statement supports a reduced sentence because he is experiencing deteriorating physical conditions because of the natural aging process. But Mann is not suffering from a terminal condition from which is not expected to recover. And he has not demonstrated that any condition from which he suffers is beyond the facility's capacity to provide proper treatment.

Although his recommended surgery has been postponed, it appears that Mann's hip-related ailments have marginally improved with non-surgical treatment and surgical intervention remains an option. Further, the government acknowledges that BOP will be able to provide long-term specialized care if Mann's joint issues worsen. Beyond these considerations, Mann does not contend that he is suffering from a diminished capacity to independently provide self-care as an inmate aside from pain management. Ultimately, the Court concludes that Mann does not suffer from the type of deteriorating physical condition that either the Sixth Circuit or the Sentencing Commission's policy statement contemplates as an extraordinary and compelling reason that warrants relief.

Mann further argues that his extensive participation in rehabilitative programs while incarcerated justify a reduced sentence. He asserts that his involvement in behavioral therapy and skills development programs while incarcerated reduce the likelihood that he would recidivate if he is released. [Record No. 323] The government disagrees, arguing that Mann's

---

[9] United States Sent. Comm'n, *2023 Amendments to the Sentencing Guidelines*, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf.

participation in BOP programming does not constitute an extraordinary circumstance. [Record No. 309, pp. 5-6]

The Sixth Circuit has repeatedly held that a defendant's post-conviction rehabilitation does not necessarily render him eligible for compassionate release. *See McCall*, 2022 WL 17843865, at *11 ("[R]ehabilitation . . . cannot by itself justify a sentence reduction."); *see also United States v. Ruffin*, 978 F.3d 1000, 1009 (6th Cir. 2020). Mann's achievements in therapy and skills development programs are commendable, but they do not amount to an extraordinarily and compelling circumstance, even when considered in combination with other reasons that the defendant believes warrant a reduced sentence.

Finally, even if Mann had presented an extraordinary and compelling reason justifying a sentence reduction, granting his motion would be inconsistent with statutory sentencing factors. Under 18 U.S.C. § 3553(a)(1)-(2), courts consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

These factors weigh against granting the relief requested by the defendant. As the Court noted during the sentencing hearing, the facts of Mann's case present an egregious set of circumstances that suggest he inflicted substantial harm across the community. They include

the fact that he possessed a significant amount of methamphetamine, a .32 caliber pistol despite being a convicted felon, and a pipe bomb. [Record No. 325] The items in Mann's possession at the time of his arrest strongly indicate that he was a "dangerous armed drug trafficker." *Id*.

Mann also has an extensive criminal history. *Id*. As such, Mann received enhancements to his Base Offense Level to account for the severity of his conduct and the threat he posed to human life and the environment. And as the undersigned observed when concluding that life imprisonment was a fitting punishment, "if [Mann] were to be released, it would appear that he would soon be back before this Court." [Record No. 205] A reduction of Mann's sentence would not give proper weight this earlier determination, nor would it reflect the seriousness of his offenses. Therefore, based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1. Defendant Mann's *pro se* motion for compassionate release [Record No. 323] is **DENIED**.

2. Defendant Mann's motion for an extension of time [Record No. 328] is **DENIED** as moot.

Dated: February 16, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky